Filed 5/22/24  In re A.Y. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.Y., a Person Coming Under the Juvenile Court Law. | |
| MARIN COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>E.Y.,<br><br>        Defendant and Appellant. | A168831<br><br>(Marin County<br>Super. Ct. No. JV27190A) |

EY. (mother) appeals from an order terminating her parental rights to her child AY. (minor) under Welfare and Institutions Code section 366.26.[1] Her sole contention on appeal is the Marin County Health and Human Services Department (Department) and juvenile court failed to comply with the initial inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA).[2]

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] In her notice of appeal, mother states she is also appealing two other orders:  an order granting a restraining order against her for the benefit of R.H. (maternal aunt), and an order denying a petition filed under section 388

We affirm.

## BACKGROUND

In January 2022, the Department filed a section 300 petition alleging one-month-old minor has suffered, or there is a substantial risk minor will suffer, serious physical harm or illness "as a result of willful or negligent failure of [mother] to adequately supervise and protect [minor] due to her substance abuse" and "mental health issues which are exacerbated by her substance use." (§ 300, subd. (b).) Specifically, the petition alleged mother had used amphetamines for two days in December 2021 while minor was in her care, mother had a "past history of polysubstance drug [use] and used substances during her pregnancy," mother had "used methamphetamine and other substances off and on for over a decade," and mother had a "history of multiple hospitalizations due to suicidality while [she was] under the influence while [minor's] sibling was previously in her care, thus putting [minor] at substantial risk of harm." The petition averred the Department had completed an initial ICWA inquiry asking mother about minor's Indian status (Judicial Council form ICWA-010) and that inquiry "gave . . . no reason to believe the child is or may be an Indian child."

At the detention hearing, mother denied the allegations of the petition. The juvenile court, after finding there had been an ICWA inquiry with respect to mother and there is no reason to believe minor is an Indian child or

---

seeking reinstatement of reunification services. However, in her appellate briefing, mother presents no argument as to those orders and any challenge to them has therefore been waived. (*In re Adrian L.* (2022) 86 Cal.App.5th 342, 344, fn. 1 (*Adrian L.*).)

that ICWA applied, placed minor with mother and ordered family maintenance services.[3]

In its February 2022 jurisdiction/disposition report, the Department observed the juvenile court had found ICWA did not apply. In an interview, mother stated she had two older sisters, R.H. and J.J.[4] She had a close relationship with her parents (maternal grandparents) despite maternal grandfather's "tendency to abuse alcohol." Even though he "disciplined her physically, she has great memories with her father . . . and they did many activities together, like building things, teaching [mother] how to cook, and participating in the 'Indian Princess' program." Both maternal grandparents had passed away.

At the jurisdictional hearing, the trial court sustained the section 300 petition, found the allegations were true by a preponderance of the evidence, and adjudged minor a dependent of the court.

At the disposition hearing, the court continued minor's placement with mother and ordered family maintenance services.

In its family maintenance status review report, the Department once again stated the juvenile court had found ICWA did not apply and recommended continuation of maintenance services. At the review hearing,

---

[3] Mother identified four men as possible biological fathers to minor. Two were ruled out due to minor's ethnicity. Of the remaining two possible fathers, alleged father M.P. made his first appearance at the section 366.26 hearing. However, DNA testing revealed M.P was not minor's biological father. Mother did "not know any identifying information" for the second man who mother identified as "Sean." Neither M.P., nor any other alleged father is a party to this appeal.

[4] To avoid confusion, we refer to R.H. as maternal aunt or by her initials, and J.J. only by her initials.

3

the court agreed with the recommendation and continued supervision and family maintenance services.

In August 2022, the Department filed a supplemental dependency petition, alleging mother had relapsed during the interim period and been involved in "two domestic violence incidents" with her boyfriend, one of which occurred while minor was in the home. Mother had also "stopped adhering to her medication regime" and missed several therapy sessions. The petition noted minor had been "detained" on August 23, and on that same day, the assigned social worker served a warrant to remove minor from mother's custody.

In its detention report, the Department recommended minor be detained and a jurisdiction/disposition hearing be set. Mother reported she had been involved in a domestic violence incident with her then-boyfriend. After they argued, mother went into the bedroom where her boyfriend followed her, " 'pounced on her,' " and "proceeded to choke her." Mother also admitted she had relapsed, using cocaine, alcohol, marijuana, and methamphetamines in the days following the incident. After the incident, mother had called maternal aunt who came and took minor. Minor, who was now nine months old, was currently placed with maternal aunt.

The Department updated its ICWA efforts, noting in a December 2021 interview, mother had "denied that she is a registered member of a Native American tribe or Alaskan Native village." In August 2022, mother "again denied" and maternal aunt also denied being registered members of any tribe or village.

At the subsequent hearing, the court detained minor and found there was no reason to believe or know minor was an Indian child and that ICWA did not apply and continuance in mother's home to be contrary to minor's

4

welfare.  The court placed minor with maternal aunt and ordered reunification services and visitation.

In its October 2022 jurisdiction/disposition report, the Department recommended the court sustain the supplemental petition and order reunification services.  The Department again noted the juvenile court had previously found ICWA did not apply and reported minor was "comfortable and adjusting to his placement" with maternal aunt, who had started the resource family approval process.

At the jurisdiction and disposition hearings, the court sustained the supplemental petition, adjudged minor a dependent, found there was no reason to know or to believe minor is an Indian child, and unless new information was received indicating such, ICWA did not apply.  The court also ordered visitation and reunification services, and set the matter for a review hearing.

In its six-month review report, the Department recommended termination of services and that the court set a section 366.26 hearing.  The Department reiterated the court had previously found ICWA did not apply.  Since the last report, mother had been released from her inpatient drug treatment program.  In November, she reported her sister, J.J., "who uses substances, randomly show[ed] up to [mother's] home."  Mother's "safety plan" for "when [J.J.] shows up to her home" included leaving or calling maternal aunt, R.H.  J.J. was also on a list of "slippery people" to avoid.  In the following month, mother was proactive in participating in services and visitation had just been increased and changed to be unsupervised.  But in January and February 2023, mother's "support team" expressed concern over her recent behavior.  Mother reported having relapsed and having contacted her ex-partner and engaging in "violent behavior with him."  Minor's half-

5

sibling[5] called maternal aunt worried about minor "because he knew [mother] had relapsed." Minor, now 16 months old, remained with maternal aunt and was "thriving" and "developmentally on track."

At the six-month review hearing, the court found the Department had provided reasonable services in an effort to return minor home and mother had made minimal progress in alleviating the causes that led to placement, terminated reunification services, and set the matter for a section 366.26 hearing for selection of a permanent plan. Although mother filed an intent to file a writ petition challenging the setting of the section 366.26 hearing, she did not move forward with doing so.[6]

On August 22, 2023, the Department submitted a Parental Notification of Indian Status Form (Judicial Council form ICWA-020) signed by mother's attorney, indicating she did not have any "Indian Status."

On the same day, the court held the section 366.26 hearing. As we have noted, alleged father M.P. made his first appearance in the case at this hearing. After the court questioned him regarding any Indian heritage, the court turned to mother, at which point the case worker stated, "my understanding is that [mother] has declined to fill out the ICWA-020 form." Mother's counsel then told the court, "Mother states she has not declined to fill it out, but that she is still looking into the issue herself of whether she has." The court then questioned mother directly as follows:

"THE COURT: [Mother], are you a member or citizen of an American Indian tribe?

---

[5] Minor's half-sibling lived out-of-state with his paternal grandmother.

[6] In the meantime, mother filed a section 388 petition requesting the court order an additional six months of reunification services. The trial court denied the petition.

6

"[Mother]: I do not know.

"THE COURT: Well, do you have a membership in a tribe?

"[Mother]: All I can tell you is that my father was a foster child, and I don't know much of his background.

"THE COURT: I'm not asking about your father, I'm asking about you.

"[Mother]: I don't know if I'm a member of a tribe, because I would have to look.

"THE COURT: And in the 14 months you've been under the Court's jurisdiction you have not made that inquiry?

"[Mother]: That has not something that's come to my mind or been asked.

"THE COURT: But you have no knowledge that you are a member?

"[Mother]: I do not have knowledge. . . .

"THE COURT: Is [minor] a member or citizen of an American Indian tribe?

"[Mother]: No, he's not registered, no.

"THE COURT: And you are not registered?

"[Mother]: Not of my knowledge?

"THE COURT: Well, have you ever registered?

"[Mother]: My father might have. I'm not sure.

"THE COURT: My question is have you ever registered?

"[¶] . . . [¶]

"[Mother]: Have I? No—[¶] . . . [¶] maybe my parents have.

"THE COURT: Have you ever received any documentation indicating that you are a member of an American Indian tribe?

"[Mother]: No.

"THE COURT: Okay. [¶] Have you ever received any information or documentation that you are a citizen of an American Indian tribe?

"[Mother]: I just know I participated in something called Indian Princess when I was a child, and I'm not sure.

"THE COURT: That is a far cry from—

"[Mother]: Okay. [¶] Is that very different?

"THE COURT: Yes.

"[Mother]: Okay. [¶] So no, I don't have any knowledge.

"THE COURT: Okay. [¶] I'm aware of that program, that's a far cry from being a member or citizen."

The court went on to ask whether mother resided on a reservation, whether minor had ever been a ward of a tribal court, or whether mother possessed an identification indicating she was a citizen or tribal member. Mother responded negatively.

The trial court concluded there was "nothing here to indicate that ICWA would apply."

At the continued hearing, a month later, the court found minor generally and specifically adoptable, terminated mother's parental rights, and set the permanent plan as adoption.

## DISCUSSION

" 'Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.] ICWA establishes 'minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes.' [Citation.] California has adopted 'various procedural and substantive provisions' to supplement ICWA and, following the enactment of

8

new federal regulations, 'California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements.' " (*In re E.W.* (2023) 91 Cal.App.5th 314, 320 (*E.W.*).)

"The juvenile court and the Agency have 'an affirmative and continuing duty' to inquire whether a child for whom a section 300 petition has been filed 'is or may be an Indian child.' (§ 224.2, subd. (a).)" (*E.W.*, *supra*, 91 Cal.App.5th at p. 320.) Section 224.2, subdivision (b) provides, "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307," the county welfare or probation department "has a duty of initial inquiry that 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' (§ 224.2, subd. (b).) The phrase 'extended family members' is defined to include adults who are the child's 'grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' (25 U.S.C. § 1903(2); see . . . § 224.1, subd. (c) [adopting ICWA definition of 'extended family member'].)" (*E.W.*, at pp. 320–321.)

"If the initial inquiry creates 'a reason to believe' the child is a Native American child, but there is not sufficient information to determine that there is 'reason to know that the child is an Indian child,' the Agency must make 'further inquiry . . . as soon as practicable.' (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, interviewing the parents, Native American custodian, and extended family members. (*Id.*, subd. (e)(2)(A).) If

this further inquiry establishes a 'reason to know' the child is a Native American child, notice must be provided to the pertinent tribes. (§ 224.3, subd. (a).)" (*E.W.*, *supra*, 91 Cal.App.5th at p. 321.)

On appeal, mother raises one issue—whether the Department and juvenile court failed to comply with their duty of initial inquiry by failing to inquire of four extended family members, namely the maternal grandparents and maternal aunts, "one of whom was the caretaker for [minor]."

A split of authority has developed in the courts of appeal as to whether the prescribed initial duty of inquiry "is required where, as here, the child has been taken into protective custody pursuant to a warrant, and not 'pursuant to section 306.'" (*In re L.B.* (2023) 98 Cal.App.5th 512, 517.) Some courts have answered in the negative. (*In re Robert F.* (2023) 90 Cal.App.5th 492, 504, review granted July 26, 2023, S279743 [§ 224.2, subd. (b) inquiry limited to warrantless removals]; *In re Ja.O.* (2023) 91 Cal.App.5th 672, 681, review granted July 26, 2023, S280572; *In re Andres R.* (2023) 94 Cal.App.5th 828, 845, review granted Nov. 15, 2023, S282054.) Other appellate courts have responded in the positive. (*In re Delila D.* (2023) 93 Cal.App.5th 953, 962–975, review granted Sept. 27, 2023, S281447 [§ 224.2, subd. (b) inquiry applies "no matter how the child is initially removed from home"]; *In re V.C.* (2023) 95 Cal.App.5th 251, 260 [agreeing with *Delila D.*] (*V.C.*); *In re L.B., supra*, 98 Cal.App.5th at p. 517 [same].) The issue is presently pending before our Supreme Court. (*In re Robert F., supra,* 90 Cal.App.5th 492, review granted July 26, 2023, S279743.)[7]

---

[7] We note there is pending legislation which, if enacted, would address this issue. (Assem. Bill No. 81 (2023–2024 Reg. Sess.) as amended Sept. 1, 2023 [§ 224.2, subd. (b) is amended to read, "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, *or if they are placed in*

10

We need not, however, weigh in on the question. Even assuming the initial duty of inquiry as to extended family members applied, the Department fulfilled such duty.

As we have recited, mother initially indicated she had no Native American ancestry. In December 2021, the Department asked mother and alleged father, M.P., about their and minor's Indian status, and neither gave any indication minor may be an Indian child. At the January 2021 detention hearing, at which mother was present, the court stated there had been an inquiry and there was "no reason to believe [minor] is an Indian child and ICWA does not apply." Mother said nothing to the contrary. In August 2022, mother "again denied that she is a registered member" of any tribe or village. Finally, apparently just before or immediately after the section 366.26 hearing, mother filed an ICWA-020 form, signed by her attorney, indicating ICWA did not apply.

If the Department had limited its inquiry to mother's representations, it would not have fulfilled an initial duty of inquiry including extended family members. However, the Department—contrary to mother's argument—*did* inquire of maternal aunt, the only other relative present, and she also stated there was no Native American ancestry. The Department could not have inquired of maternal grandparents, as mother inexplicably suggests, because they were both deceased. Mother's remaining sister, J.J., was never present at any hearing. Nor does the record show mother ever provided any contact information for her. Additionally, mother does not explain how not interviewing this sister—assuming the Department had been able to find

*temporary custody pursuant to a warrant described in Section 340*, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child."].)

11

her—would "cast[] any doubt on the reliability of the answers already obtained" not only from mother, but also the other maternal aunt. (See *E.W., supra*, 91 Cal.App.5th at p. 323.)

Moreover, even assuming error, it was harmless. The Courts of Appeal have taken varying approaches to assessing prejudice in the context of initial inquiry pursuant to section 224.2, subdivision (b): "(1) deficient inquiry necessarily infects the juvenile court's ruling and reversal is automatic and required ('automatic reversal rule') (see, e.g., *In re G.H.* (2022) 84 Cal.App.5th 15, 32; *In re A.R.* (2022) 77 Cal.App.5th 197, 207; *In re J.C.* (2022) 77 Cal.App.5th 70, 80; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 432–437 (*Antonio R.*); *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 (*Y.W.*)); (2) deficient inquiry is harmless unless the record below demonstrates, or the parent on appeal makes an offer of proof or other affirmative assertion of, Indian heritage 'presumptive affirmance rule' (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069); (3) deficient inquiry requires reversal where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 (*Benjamin M.*)); and (4) deficient inquiry is harmless unless the record contains information suggesting a 'reason to believe' the child is an Indian child (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578 (*Dezi C.*))." (*V.C., supra*, 95 Cal.App.5th at pp. 260–261.)

We join with many other courts in declining to apply either the automatic reversal rule (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999–1003; *Dezi C., supra*, 79 Cal.App.5th at pp. 782–784) or the presumptive affirmance rule (*V.C., supra*, 95 Cal.App.5th at p. 261; *Dezi C.,* at p. 785).

12

We note some divisions of this court have opted to follow the " 'readily obtainable information' " test as set forth in *Benjamin M.* (See *In re L.B., supra*, 98 Cal.App.5th at p. 519; *V.C., supra*, 95 Cal.App.5th at p. 262.) However, we need not choose between the approach in *Benjamin M.* or that in *Dezi C., supra,* 79 Cal.App.5th at page 769. Any error was harmless under either of these "middle ground" approaches. (See *In re K.H.* (2022) 84 Cal.App.5th 566, 614, 616.)

Under *Benjamin M.,* it is not "likely" any information obtained from J.J. would "bear meaningfully upon whether [minor] is an Indian child," or "would have shed meaningful light on the inquiry that the agency had the duty to make." (*Benjamin M., supra*, 70 Cal.App.5th at p. 744.) That one maternal aunt would have meaningful information neither mother nor the maternal aunt with custody did not report, is not remotely probable, especially since the sisters grew up in the same household with the same parents. Thus, this is not a case "where the probability of obtaining meaningful information" through "continued inquiry" is "reasonable in the context of ICWA." (*Ibid.*; *Adrian L., supra*, 86 Cal.App.5th at pp. 351–353 [any error harmless because a "review of the record as a whole does not disclose that unquestioned extended family members were likely to have had information that would have borne meaningfully on whether [minor] is an Indian child"].)

For the same reasons, we conclude the record does not "contain[] information suggesting a reason to believe" minor may be an Indian child under ICWA. (*Dezi C., supra,* 79 Cal.App.5th at p. 779.) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for

13

membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e)(1).)

Section 224.2, subdivision (d), in turn, provides, "There is reason to know a child involved in a proceeding is an Indian child under any of the following circumstances: [¶] (1) A person having interest in the child . . . or a member of the child's extended family informs the court that the child is an Indian child. [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village. [¶] (3) Any participant in the proceeding . . . informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child who is the subject of the proceedings gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (See *Dezi C., supra*, 79 Cal.App.5th at p. 779 ["[A] reviewing court would have 'reason to believe' further inquiry might lead to a different result if the record indicates that someone reported possible American Indian heritage and the agency never followed up on that information; if the record indicates that the agency never inquired into one of the two parents' heritage *at all* (e.g., *Benjamin M., supra*, 70 Cal.App.5th at p. 740); or if the record indicates that one or both of the parents is adopted and hence their self-reporting of 'no heritage' may not be fully informed (e.g., [*In re A.C.* (2022)] 75 Cal.App.5th [1009,] 1015–1016)."].)

14

None of those situations are present here. Mother did not report any Indian heritage. Rather, she stated only that she had participated in an "Indian Princess Program" with her father (maternal grandfather), and she did not know much of his background because he was a foster child. The trial court was aware of the program mother mentioned, stating "that's a far cry from being a member or citizen." Additionally, the trial court then questioned mother at length regarding her background, and mother denied ever registering for membership, denied that she ever received any documentation that she belonged to any tribe, and denied that minor had ever been registered with any tribe. Finally, mother was not adopted.

## DISPOSITION

The orders denying mother's section 388 petition and granting a restraining order are affirmed. The order terminating mother's parental rights and selecting adoption as A.Y.'s permanent plan is also affirmed.

_____
Banke, Acting P. J.

We concur:


_____
Langhorne Wilson, J.


_____
Siggins, J.*



A168831, In re AY

_____

&ast; Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16